SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

DIAMOND STANDARD LLC.

      Plaintiff(s),

 -against-

NILOUFAR EBADI

      Defendant(s).

---

Index No.

**Summons**

Date Index No. Purchased:

To the above named Defendant(s)

NILOUFAR EBADI

 You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

 The basis of venue is Defendant's previous place of employment which is 565 Fifth Avenue, New York, NY 10017

Dated: New York, New York
   March 7, 2023

         Kauff McGuire & Margolis LLP

         by /s/ Michele A. Coyne

         Michele A. Coyne
         Attorneys for Plaintiff

         Michele A. Coyne
         950 Third Avenue,
         Fourteenth Floor New York,
         New York 10022-2075
         (212) 644-1010

**Kauff McGuire & Margolis LLP**
**950 Third Avenue, Fourteenth Floor**
**New York, New York 10022**
**(212) 644-1010 (Telephone)**
**(212) 644-1936 (Facsimile)**

*Attorneys for Plaintiff*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| DIAMOND STANDARD LLC., | Index No. |
| Plaintiff, | |
| - against – | **VERIFIED COMPLAINT** |
| NILOUFAR EBADI, | |
| Defendant. | |

Plaintiff DIAMOND STANDARD LLC. ("Plaintiff" or "Diamond Standard" or the "Company"), by its attorneys Kauff McGuire & Margolis LLP, as and for its complaint against Defendant NILOUFAR EBADI ("Defendant") alleges as follows:

**NATURE OF ACTION**

1. This is an action to recover damages from a problematic, former short-term employee, who maliciously and deceptively deleted hundreds of her employer's files upon being terminated.

2. Diamond Standard employed Defendant for approximately 4.5 months before terminating her for performance, including her lack of interpersonal skills with work colleagues.

3. Upon being terminated, Defendant deliberately deleted Company assets from her Company laptop under the pretext of transferring personal computer files.

4817-4327-9017

4. Accordingly, Diamond Standard brings this action seeking redress for Defendant's unlawful conduct.

## THE PARTIES

5. Diamond Standard is the producer of the world's first diamond commodities. Diamond Standard is a technology developer, diamond market-maker and commodity producer, headquartered in New York City.

6. Defendant served as Diamond Standard's Senior Accountant in its New York City office between March 14, 2022, and July 27, 2022.

## JURISDICTION AND VENUE

7. This Court has personal jurisdiction over Defendant because at the time of the events in question she worked in New York City.

8. Venue is properly laid in New York County because Defendant worked in New York County, because Diamond Standard is located in New York County, and because Defendant's unlawful conduct has occurred in New York County.

## FACTUAL ALLEGATIONS

***Shortly After Being Hired, Defendant Displays a Stunning Lack of People Skills and Quickly Becomes a Problematic Employee***

9. Diamond Standard sent Defendant an offer letter on March 3, 2022, and ultimately hired her on March 14, 2022, to work as a Senior Accountant in its New York City Office

10. Less than three months later, it had already become apparent that Defendant had a poor attitude at work.

11. On or about June 1, 2022, John Betts ("Betts"), a Diamond Standard employee, contacted Matthew Potenza ("Potenza"), Defendant's recruiter, and described Defendant's poor attitude at work.

12. On or about June 6, 2022, Potenza offered to call Defendant to discuss her negative attitude at work.

13. On or about June 6, 2022, James Campbell ("Campbell"), Diamond Standard's Chief Financial Officer, summarized a conversation that he had with Defendant.

14. In that summary, Campbell explained that Defendant refused to train colleagues on Microsoft Dynamics ("MS Dynamics"), a program that Diamond Standard routinely used.

15. According to Campbell, Defendant also claimed that she was superior to the rest of the finance team on MS Dynamics, and requested that she be permitted to work from home moving forward, rather than at the office.

16. Campbell's summary also reiterated that Defendant had an attitude problem at work.

17. The problems that Campbell identified were by no means isolated incidents. During her employment, Defendant repeatedly missed meetings, arrived late for work, and refused to report to her superior, Pablo Patino ("Patino").

18. These problems became so severe that Diamond Standard tried to get Potenza, Defendant's recruiter, to coach her on appropriate workplace conduct.

19. In addition, members of Diamond Standard's management team spoke with Defendant about her workplace issues and took steps to find her a professional coach.

20. Defendant also had a problematic relationship with Adam Bauman ("Bauman"), Diamond Standard's accountant. Specifically, Defendant loudly and publicly berated Bauman attempting to embarrass and belittle him in front of a Company intern.

21. Defendant ultimately had a public outburst directed at Bauman that was so severe that he was brought to tears and went home instead of attending a planned Company dinner.

22. On July 27, 2022, shortly after her outburst, Defendant emailed Bauman attempting to

apologize for her actions.

### *Diamond Standard Terminates Defendant and Defendant Deletes Company Files*

23. Defendant's inappropriate conduct towards Bauman on July 27, 2022, was the last straw for the Company.

24. On July 27, 2022, Diamond Standard terminated Defendant for her severe lack of interpersonal skills and inappropriate workplace conduct.

25. Cormac Kinney ("Kinney"), Diamond Standard's Founder and Chief Executive Officer, told Defendant that she was terminated.

26. Kinney then asked Defendant to return her Company laptop.

27. Diamond Standard previously issued Defendant a laptop with a Google program already installed. It instructed Defendant to save all of her files through the Google program so that they could be saved and accessed by other Diamond Standard employees.

28. Notwithstanding this instruction, Defendant refused to comply, and saved her work product locally on her Company-provided laptop.

29. As a result, only she could access the documents that she saved locally; other employees at Diamond Standard had no access to these locally saved documents.

30. When Kinney asked her to return her laptop, Defendant claimed that she had personal records on the Company laptop, and that she wanted to transfer her personal files to herself.

31. Kinney offered Defendant his own USB chip to facilitate the transfer.

32. Defendant was given space at Diamond Standard's office to retrieve her personal files, with Diamond Standard employee Alicia Kenny ("Kenny") initially present in the room while she did so.

4

4817-4327-9017

33. Defendant subsequently objected to Kenny's presence. Defendant claimed that she was uncomfortable with having Kenny present in the room while she addressed her personal files, and requested that Kenny leave the room.

34. Diamond Standard accommodated Defendant's request, removing Kenny from the room.

35. After Kenny left, Defendant deleted hundreds of Company files from her Company-provided laptop.

36. Between 5:35 p.m. and 5:48 p.m., when Kenny had already left the room, Defendant deleted over 700 megabytes of Company files from her laptop.

37. The files that Defendant deleted constituted the vast majority of her work product since she was hired on March 14, 2022.

38. Defendant deleted documents that were clearly related to work, rather than her personal life.

39. For example, Defendant deleted documents with names such as "Accounts Payable" and "Company Files."

40. In addition to deleting individual Company documents, Defendant deleted entire folders of work product.

41. On August 1, 2022, Kinney emailed Defendant, stating in relevant part:

> I was disappointed to learn about your actions on Friday [July 27, 2022].
>
> I offered you time to copy your personal files from the company laptop that was provided to you, and I even gave you my own USB chip to facilitate this for you.
>
> During this time, you deleted over 700MB of company files from the laptop, basically all of your work product from the last several months. Alicia was concerned about this potential because she had instructed you repeatedly to store your work files on the company server, and you repeatedly refused to do so. The laptop files were the only copies for a large portion of your work.

5

4817-4327-9017

> When Alicia sat next to you to monitor your file copying, you asked me to remove her from the room. I did so, and as I sat next to you, you continued to maliciously delete company assets. Clearly this was no accident . . .

42. Diamond Standard learned that Defendant deleted financial documents that were essential to its reporting obligations.

43. Defendant's unauthorized destruction of Company property caused Diamond Standard significant harm.

## FIRST CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY

44. Diamond Standard realleges and incorporates Paragraphs 1 through 43 of this Complaint as though fully set forth herein.

45. As an employee of Diamond Standard, Defendant had a fiduciary relationship with her employer.

46. Defendant engaged in misconduct by deleting Company files during her employment.

47. Defendant's misconduct directly caused damage to Diamond Standard.

48. As a result, Diamond Standard is entitled to damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION: CONVERSION

49. Diamond Standard realleges and incorporates Paragraphs 1 through 48 of this Complaint as though fully set forth herein.

50. While employed by Diamond Standard, Defendant created electronic files and other documents on a Company-provided laptop as part of her employment.

51. These electronic files and other documents were Diamond Standard's property.

52. Defendant had ownership, possession, and control over this property before she destroyed it.

6

4817-4327-9017

53. By surreptitiously destroying Diamond Standard's property without authorization, Defendant exercised unauthorized dominion over the property in question, to the alteration of its condition and to the exclusion of Diamond Standard's rights.

54. Defendant's unlawful conduct directly caused damage to Diamond Standard.

55. As a result, Diamond Standard is entitled to damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION: VIOLATION OF COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. §1030(a)(2)(C))

56. Diamond Standard realleges and incorporates Paragraphs 1 through 55 of this Complaint as though fully set forth herein.

57. Defendant intentionally accessed Diamond Standard's computer and exceeded her authorized access by destroying Company property.

58. Defendant's unlawful conduct directly caused a loss to Diamond Standard in an amount exceeding $50,000.

59. As a result, Diamond Standard is entitled to damages in an amount to be determined at trial.

**WHEREFORE** Plaintiff demands judgment against Defendant and respectfully requests that the Court award it:

A. Money damages to compensate Diamond Standard for the various damages Defendant has caused its business, in an amount to be determined at trial.

B. Interest in an amount to be determined by the Court.

C. The costs and fees incurred in bringing and prosecuting this action; and

D. Such further relief as the Court deems necessary and proper.

Dated: New York, New York
March 7, 2023

KAUFF McGUIRE & MARGOLIS LLP

By: /s/Michele A. Coyne

Michele A. Coyne
950 Third Avenue, Fourteenth Floor
New York, New York 10022-2075
(212) 644-1010

*Attorneys for Plaintiff*

8

4817-4327-9017

## VERIFICATION

Cormac Kinney, being duly sworn, deposes and says that he is employed at Diamond Standard as its Chief Executive Officer, and that he has personal knowledge of the matters set forth in the annexed Verified Complaint (except as to those matters stated on information and belief), and that the contents thereof are true to the best of his knowledge and belief.

_____
Cormac Kinney

Sworn to before me

this __2nd__ day of March, 2023

_____
Notary Public

GERYNA R COCHRANE SANDY
Notary Public - State of New York
NO. 01CO6119439
Qualified in Suffolk County
My Commission Expires May 6, 2025

4817-4327-9017

9